**WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP**
Andrew J. Heck, Esq. (Attorney ID No.: 011802012)
7 Giralda Farms
Madison, NJ 07940
T. (973) 624-0800
F. (973) 624-0808
*Attorneys for Defendants, Bombardier Transportation (Holdings) USA, Inc. i/s/a Alstom Bombardier Transportation (Holdings) USA Inc. and Port Authority of New York and New Jersey*

| | |
|---|---|
| MATTHEW PENSO,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>PORT AUTHORITY OF NEW YORK AND NEW JERSEY, BOMBARDIER TRANSPORTATION (HOLDINGS) USA INC., and JOHN DOE COMPANY #1-5 (fictitious name),<br>　　　　　　　Defendants. | Civil Action No. 2:23-cv-00474<br><u>Civil Action</u> |

---

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE*

---

*Of Counsel:*
Andrew J. Heck, Esq.

*On the Brief:*
Andrew J. Heck, Esq.

328631821v.1

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...............................................................................1

LEGAL ARGUMENT .............................................................................................1

    I.     Legal Standard.........................................................................................1

    II.    Plaintiff's Complained-Of Evidence Is Clearly Admissible and Must Not Be Kept from the Jury ...........................................................3

         a.     Text Messages.................................................................................3

         b.    PRG Operations and Performance .................................................5

         c.     Plaintiff's Personal Life and Efforts to Join the Cast of TV Shows ...........................................................................................7

         d.    Unrelated Prior Medical Treatment ...............................................8

         e.     Testimony from Amanda Stergas ..................................................10

         f.     Testing by Dr. Delk.......................................................................11

         g.    Evidence Related to Plaintiff's Learning Disabilities or Accommodations in College ........................................................13

         h.    Plaintiff's Prior Motor Vehicle Accident......................................14

         i.     Report and Associated Opinions of Dr. Nancy Just, Ph.D. .......14

CONCLUSION ......................................................................................................16

328631821v.1

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Coleman v. Home Depot, Inc.*,
    306 F.3d 1333 (3d Cir. 2002) ........................................................................2, 3

*Forrest v. Beloit Corp.*,
    424 F.3d 344 ............................................................................................1, 2, 3

*Gibson v. Mayor & Council of Wilmington*,
    355 F.3d 215 (3d Cir. 2004) .............................................................................2

*United States v. Green*,
    617 F.3d 233 (3d Cir. 2010) .........................................................................2, 6

**Rules**

Fed. R. Evid. 401 .....................................................................1, 6, 7, 8, 12, 13, 14

Fed. R. Evid. 402 ...........................................................................................2

Fed. R. Evid. 403 ........................................................ 1, 2, 3, 4, 8, 9, 11, 12, 13, 14

Fed. R. Evid. 801(d)(2) ......................................................................................3

Fed. R. Evid. 803 .........................................................................................3, 4

328631821v.1

## PRELIMINARY STATEMENT

It is a rare event when evidence that is relevant is excluded for causing unfair prejudice to the party against whom it is offered. Mere prejudice, *i.e.*, the fact that certain pieces of evidence will not be favorable to a party, does not serve as a sufficient basis to exclude the evidence. The prejudice must be extreme and must essentially create an unfair advantage to the offering party in order for evidence to be justifiably excluded pursuant to Federal Rule of Evidence 403.

Plaintiff's motion in limine to exclude various pieces of evidence for lack of relevance and/or undue prejudice fails to demonstrate irrelevance or that the prejudice to him would be so severe that it would create an unfair advantage to Defendants. Rather, it is clear that the evidence singled out by Plaintiff is simply evidence that he deems will be harmful to his case and that he would prefer to be kept from the jury. Of course, this is not a basis to exclude the evidence and would cause Defendants to suffer extreme undue prejudice. For the reasons that follow, Plaintiff's motion must be denied, in its entirety.

## LEGAL ARGUMENT

### I.      Legal Standard

All evidence that is relevant is admissible, absent certain caveats. *See* Fed. R. Evid. 401; *see also Forrest v. Beloit Corp.*, 424 F.3d 344, 355. Evidence is relevant when "it tends to make the existence or nonexistence of a disputed material fact more

1

probable than it would be without that evidence." *See* Fed. R. Evid. 402; *see also*

*Forrest*, 424 F.3d at 355. The definition of relevance is "very broad." *Gibson v.*

*Mayor & Council of Wilmington*, 355 F.3d 215, 232 (3d Cir. 2004). "[E]vidence

concerning a witness's credibility is always relevant, because credibility is always

at issue. *United States v. Green*, 617 F.3d 233, 251 (3d Cir. 2010).

The Federal Rules recognize that relevance of evidence alone does not ensure

its admissibility; pursuant to Rule 403, evidence may be excluded when its probative

value is outweighed by issues its admission may cause, e.g., unfair prejudice,

confusion of the issues, misleading the jury, undue delay, waste of time, or needless

presentation of cumulative evidence. *See* Fed. R. Evid. 403; *see also Coleman v.*

*Home Depot, Inc.*, 306 F.3d 1333, 1343 (3d Cir. 2002). However, "there is a strong

presumption that relevant evidence should be admitted, and thus for exclusion under

Rule 403 to be justified, the probative value of evidence must be 'substantially

outweighed' by the problems in admitting it." *Coleman*, 306 F.3d at 1333-34.

Rule 403 "necessarily requires that the District Court engage in balancing to

determine whether the probative value of the evidence is 'substantially outweighed'

by the negative factors listed in Rule 403. *Id.* at 1344. The proper balancing equation

places the maximum reasonable probative force of the offered evidence on one side

while the prejudicial impact of the evidence is placed on the other. *Id.* Evidence that

is highly probative is exceptionally difficult to exclude. *Id.* Notably, the mere fact

2

that evidence is prejudicial to a party does not warrant its exclusion under Rule 403. *See Forrest*, 424 F.3d at n.10. "Indeed, any evidence that tends to harm a party's case could be said to be prejudicial. Thus, the prejudicial effect of admitting the evidence must rise to the level of creating an unfair advantage for one of the parties for the evidence to be excluded under Rule 403." *Id.* (quoting *Coleman*, 306 F.3d at 1343 n.6).

### II.    Plaintiff's Complained-Of Evidence Is Clearly Admissible and Must Not Be Kept from the Jury

#### a. Text Messages

Though not specifically argued by Plaintiff, Plaintiff's text messages are admissible as a whole. They are not hearsay as statements of a party opponent, *see* Fed. R. Evid. 801(d)(2), or at the very least meet several exceptions to the hearsay rule (present sense impression, excited utterance, then-existing mental, emotional, or physical condition). *See* Fed. R. Evid. 803. Therefore, the only analysis is whether the specific text messages referenced by Plaintiff in his motion (apparently those quoted in defense expert Dr. Just's report—though it is not specifically stated by Plaintiff) are relevant. They most certainly are.

First, the messages are directly relevant to Dr. Just's opinions, which Plaintiff has not challenged. Specifically, Dr. Just opines that personality issues and environmental stressors are likely affecting the outcome of Plaintiff's treatment,

3

328631821v.1

which is based upon Plaintiff's history of self-harm and his claim in text messages that his family environment is significantly impairing his ability to benefit from treatment. *See* Pl.'s Ex. A at 21. Plaintiff claims in his text messages that his interactions with his parents lead to "therapy undone every time" and have caused him to engage in self-harm to the affected bodily sites of pain. *Id.* Aside from Dr. Just's opinions, the messages are relevant to the issue of damages as they undoubtedly discuss Plaintiff's physical and mental condition. The jury must not be deprived of the ability to understand the full and complete basis of Dr. Just's opinions, or the full scope and causation of Plaintiff's claimed conditions and damages.

Further, there is no undue prejudice in the admission of the text messages, and thus the balancing test in Rule 403 resolves in favor of admission. As set forth above, there is a strong presumption of admissibility of relevant evidence unless prejudice *substantially* outweighs that evidence's probative value - there is no such prejudice here. Plaintiff will introduce evidence at trial as to his physical and mental condition and how his CRPS devastated his life. By Plaintiff's own admission in the motion, these text messages reflect Plaintiff's physical and emotional condition vis-à-vis his CRPS flare ups and demonstrate how his life has been impacted by this condition— evidence which Plaintiff will be introducing elsewhere in the trial.

4

That these messages do not paint Plaintiff in the light he wishes to present to the jury does not render the messages unfairly prejudicial. These messages will not "cloud impartial scrutiny and evaluation of the facts that are actually relevant" by the jury; rather, they are critical for the jury to evaluate the full picture of Plaintiff's credibility, claimed damages, and defense expert opinions. The Court must not usurp the function of the jury in excluding this evidence from admission.

### b. PRG Operations and Performance

Plaintiff has continually argued that information regarding PRG is not relevant because he has waived any claims for lost wages. This argument is incomplete at best, and willfully misleading at worst. While Plaintiff may not be making a claim for lost wages related to his role with PRG, he is most certainly making an economic loss claim for the inability to perform any work in the future. *See* Heck Cert, Ex. B at 70:10-14; 342:20-22; 370:21-25; *see also* Heck Cert, Ex. D. The foundation of Plaintiff's expert's opinions regarding his earning capacity and future lost wages are based entirely on his purported job functions within PRG. *See* Heck Cert, Ex. C.

Plaintiff's day-to-day activities on behalf of PRG, as well as any income earned (or not earned) with the company or by the company is critically relevant to Plaintiff's claims that he was working on major business deals and acquisitions and possessed high-level decisional authority. Damages are, of course, one of the

5

328631821v.1

necessary elements to Plaintiff's claim in this lawsuit—the issues are not limited to "Plaintiff's injuries or their cause, prognosis, or treatment … Defendant's duties and breach thereof, and... the AirTrain system or its design and malfunction on December 15, 2021." *See* See Pl.'s Mem. Law Supp. Mot. Lim. at 14.

Perhaps more crucially, the emails are relevant to Plaintiff's credibility or lack thereof. "[E]vidence concerning a witness's credibility is always relevant, because credibility is always at issue." *Green*, 617 F.3d at 251. The PRG emails clearly establish that Plaintiff lied under oath about not being able to work after the incident. *See* Heck Cert, Ex. E (specific Bates-stamped documents to be provided *in camera* due to confidentiality concerns[1]); *see also* Heck Cert, Ex. B at 70:10-14. The Court should not deprive the fact finder of its right to determine credibility and properly evaluate all of the relevant evidence. Pursuant to Rule 401, the PRG emails must be admitted.

Further, the notion that Plaintiff seeks to restrict the use of these emails is shocking given the litigated history of this issue. As set forth in Defendants' pending motion to continue the trial, Plaintiff's failure to comply with the court-ordered production of these emails for more than a year deprived Defendants of the ability to conduct discovery on the contents of these emails. Rather than being able to issue

---

[1] Such representative Bates labels include but are not limited to PENSO S&S 003844, 003949, 003950, 004511, 004575, 096701, 097708.

6

subpoenas to third parties, conduct party depositions and document discovery, and utilize expert discovery reliant on these emails, Plaintiff is being rewarded for this misconduct and now, incredibly, seeks to double-down on those rewards.  This was already a bridge too far – this relief cannot be contemplated.

### c.  Plaintiff's Personal Life and Efforts to Join the Cast of TV Shows

Plaintiff's attempts to participate in a reality TV show and his and his former fiancé's dealings with casting directors are directly relevant to Plaintiff's pre- and post-accident physical and mental state and his ability to work. Tellingly, Plaintiff does not argue that these messages are not relevant under Rule 401. They are, and must be admitted, particularly as there is no prejudice whatsoever in admitting these emails.

Plaintiff claims that these emails are "embarrassing" and "humiliating" and serve no purpose beyond "mockery" and "harassment." It is entirely unclear from Plaintiff's motion how Plaintiff's efforts to join the cast of a TV show could possibly be characterized as humiliating or embarrassing. The emails on their face contain no lewd or invasive details as to Plaintiff's personal life or his relationship with his former fiancé; they simply demonstrate Plaintiff's conversations and negotiations with casting directors for various TV shows—which again bear directly on Plaintiff's post-accident condition and ability to work. Plaintiff's personal feelings as to his former efforts and whether he views these as embarrassing in hindsight are

7

not relevant to the question of admissibility. There is no prejudice, let alone unfair prejudice, in admission of the emails, and therefore the balancing equation pursuant to Rule 403 must be resolved in favor of admission.

Moreover, as referenced in Defendants' pending motion with respect to the emails, Defendants have been deprived of the ability to conduct discovery as to the content of, amongst other things, the audition tapes submitted by Plaintiff and Ms. Stergas, which would obviously be relevant and, although likely to be embarrassing based on Plaintiff's protestations as to the emails, are not unduly so.

### d. Unrelated Prior Medical Treatment

Once again, Plaintiff conflates evidence that he views to be unfavorable to him with evidence that is not relevant under Rule 401 or that which confuses the issues before the jury under Rule 403. Plaintiff's prior medical treatment is undoubtedly relevant to his claims, or at the very least, to his credibility, and will not confuse the issues. It therefore must be presented to the jury.

Defense expert Dr. Flavin discusses Plaintiff's prior medical treatment for the purpose of noting that Plaintiff has a history of reporting high levels of subjective pain despite unremarkable objective findings, which has a bearing on how Plaintiff interprets his current pain and level of disability. *See* Plaintiff's Exhibit C at 12; *see also* Heck Cert, Ex. F. Despite Plaintiff's apparent contention, Dr. Flavin does not discuss this treatment for the purpose of connecting childhood injuries as the cause

8

328631821v.1

of Plaintiff's CRPS. The question of whether a childhood injury may be related to the CRPS is not the only situation where Plaintiff's prior medical treatment is relevant; it is relevant to Plaintiff's subjective reports of pain and to the defense expert's opinions, the full basis of which the jury must be exposed to.

Moreover, Plaintiff's prior medical treatment is relevant to Plaintiff's credibility. There are conflicts in the records as to the history of the accident, how Plaintiff felt immediately after the accident and in the two weeks before he sought treatment, and generally as to his medical history (for example, in some records and to Plaintiff's expert Dr. Greenberg, Plaintiff reported up to 32 broken bones, while other records are silent as to this fact). Whether Plaintiff is a reliable historian and whether he is credible are determinations for the jury, not the Court.

And there is no risk of confusion of the issues in violation of Rule 403. As Plaintiff notes, no expert has causally linked Plaintiff's childhood history to his CRPS diagnosis. It does not logically follow that the jury would not understand Plaintiff's alleged cause of his CRPS and would not be able to evaluate causation and damages because Plaintiff's prior medical history has been introduced. Rather, Plaintiff's prior medical history will aid the jury in understanding the full basis of the defense experts' opinions and will allow them to evaluate credibility and assign weight, as they alone are charged to do. While not necessary, to the extent any

9

remedy is contemplated, a limiting instruction, rather than preclusion, would be the more appropriate recourse given the clear relevance of this evidence.

### e. Testimony from Amanda Stergas

Plaintiff's broad strokes request to limit the testimony of Ms. Stergas to the "events of December 15, 2021, why her and Plaintiff were in New York, care she provided to Plaintiff over the next seven months, and her observations of the pain Plaintiff was experiencing" is improper as it fails to delineate specific testimony that is objected to (or not objected to), depriving Defendants of the benefit of fully addressing and briefing the issues. As a general principal, additional topics of Ms. Stergas' testimony, such as her relationship with Plaintiff and her relationship with Plaintiff's family members (as well as Plaintiff's relationship with his family members) is relevant as Plaintiff claims that his relationship deteriorated, and his engagement was broken due to his injuries. *See* Heck Cert, Ex. B at 220:13-20. The jury must be presented with the full picture of Plaintiff's and Ms. Stergas' relationship in order to properly evaluate this claim.

As to the limited number of specific sections of testimony that are cited by Plaintiff, it is clear that this testimony is relevant and must be admitted. Ms. Stergas' allegations regarding her fear of Plaintiff and Plaintiff's alleged threats to harm her are again relevant and highly probative to the breakdown of their relationship and whether Plaintiff's injuries and resulting disability were to blame, as he claims. *Id.*

10

328631821v.1

Similarly, the details surrounding Ms. Stergas' breakup, dissolution of the domestic partnership, and details regarding the storage facility and how Ms. Stergas retrieved her belongings are all relevant to that point. Testimony regarding Plaintiff's drinking history during college are directly relevant to Plaintiff's economic loss claims and his college performance and earning capacity post-college. Finally, testimony regarding Ms. Stergas' possible conversion to Judaism is again relevant to Plaintiff's and Ms. Stergas' relationship and whether Plaintiff's injury was the only factor in its breakdown, as Plaintiff claims. The testimony is additionally relevant to credibility to the extent that he and his family members have denied the events testified to by Ms. Stergas or has testified to events occurring differently.

Further, there is no risk pursuant to Rule 403 that the jury will form judgments to Plaintiff's character without reason. Again, Plaintiff has put his former relationship in issue in claiming that his CRPS and resulting alleged disability were the cause of its breakdown. He frequently uses his broken engagement to underscore the toll CRPS has taken on his life. Plaintiff cannot be permitted to use his former relationship as both a sword and a shield. The jury must be apprised of the full nature of his relationship through Ms. Stergas' testimony.

### f. Testing by Dr. Delk

Plaintiff's request to exclude Dr. Delk's records and evaluations is perhaps the most egregious example of Plaintiff simply attempting to exclude unfavorable

11

evidence under the guise of irrelevance or prejudice. Dr. Delk was a treating provider that Plaintiff saw specifically for mental health issues purportedly developed as a result of his CRPS—a significant claim in this lawsuit. That Plaintiff is unhappy with Dr. Delk's findings and methods does not render the findings irrelevant or prejudicial.

Specifically, Dr. Delk found that Plaintiff engaged in symptom magnification, possesses a propensity to complain, and fits the criteria for Narcissistic, Sadistic, and Paranoid Personality Disorders. *See* Pl.'s Ex. F. It is inconceivable that Plaintiff could argue that these findings by his treating physician are not directly relevant on Plaintiff's claimed damages and his perception of his pain, disability, and condition. Dr. Delk's findings also inform several defense expert opinions, such as Dr. Flavin's, and the jury must not be deprived of the full basis of those opinions. The records and testimony clearly meet the admissibility standards of Rule 401.

Moreover, the findings are not unfairly prejudicial under Rule 403. They are Plaintiff's treating provider's findings and diagnoses on issues directly relevant to Plaintiff's claims. They do not unduly impugn Plaintiff's character, nor will they distract the issues at hand. Much to the contrary, they will aid the jury in evaluating whether Plaintiff is credible on his claims of the severity of his pain levels and disability. Plaintiff does not like these records and prefers they be kept from the jury.

328631821v.1

Of course, this preference does not serve as grounds to exclude the evidence, and it must be admitted pursuant to Rules 401 and 403.

### g. Evidence Related to Plaintiff's Learning Disabilities or Accommodations in College

Plaintiff's learning disabilities and accommodations in college are probative to the issue of Plaintiff's earning capacity as it applies to Plaintiff's future economic loss. They are also directly relevant to Plaintiff's mental health conditions and whether same were developed after/as a result of his CRPS, or whether these were pre-existing conditions. Finally, the records serve as a basis for many of defense expert Dr. Just's opinions, for which the jury is entitled to understand the full basis.

Specifically, Plaintiff's experts opine that Plaintiff would have earned significantly more than the average bachelor's degree holder but for the incident. *See* Heck Cert, Ex. C. However, as Defendants' experts opine, Plaintiff's college records demonstrate a below average or unremarkable academic performance and significant behavioral issues that indicate that Plaintiff likely would not have attained earnings or job roles higher than the average college graduate. *See* Heck Cert, Ex. G. The records additionally served as the basis of many of Dr. Just's opinions, and contrary to Plaintiff's assertion that "any relevance to the trier of fact is unequivocally absent," the jury must be presented with the full basis of Dr. Just's opinions to properly evaluate and weigh same.

13

Finally, there is no risk of confusing or misleading the jury. The college records, including reference to Plaintiff having potentially broken 32 bones, do not make it more likely than not that jurors will "create a causal link between the CRPS and Plaintiff's past that no expert has deemed possible." Instead, the records speak directly to issues such as Plaintiff's earning capacity, credibility, and psychological state. The jury is entitled to evaluate the full picture of the evidence and make their determinations accordingly.  As above, to the extent any remedy is warranted, it is a limiting instruction, rather than preclusion.

### h.  Plaintiff's Prior Motor Vehicle Accident

Records and testimony regarding Plaintiff's prior motor vehicle accident are relevant and admissible for the same reasons Plaintiff's prior medical history is admissible, as detailed above. Briefly, Plaintiff's accident, including his treatment and his subjective reports of significant pain despite unremarkable objective findings, are relevant to Dr. Flavin's findings and Plaintiff's overall credibility. There is additionally no risk that the issues will be confused or that Plaintiff will be unfairly prejudiced by these records, for the reasons set forth above. The records therefore must be admitted under Rules 401 and 403.

### i.  Report and Associated Opinions of Dr. Nancy Just, Ph.D.

Plaintiff misrepresents the background and history of this issue. Plaintiff's counsel and the undersigned discussed the production of Dr. Just's raw data and

14

328631821v.1

informed Plaintiff's counsel of Dr. Just's position that pursuant to ethical and copyright concerns, the information could be disclosed only to Plaintiff's expert, Dr. Greenberg (a fellow psychiatric practitioner) and not to Plaintiff or Plaintiff's counsel. *See* Heck Cert, Ex. H. While Plaintiff's counsel originally objected, he later retracted that objection and stated that he would "ask Greenberg if Just can send the raw data to her in the interests of compromise." *Id.*

The undersigned received no further communications regarding this issue and has no contact information to send Dr. Greenberg the raw data. Instead of following up on this issue and at least meeting and conferring to discuss whether Plaintiff has changed his position, Plaintiff seeks to preclude Dr. Just's entire report and testimony over this pretextual issue. And, if Plaintiff were to simply provide Dr. Greenberg's contact information, Dr. Just would readily forward the raw data.

Regardless of who is at fault for not providing the information, the raw data is irrelevant at this stage in the litigation. Discovery is long over. The Court has held multiple conferences over the last several weeks indicating that there would be no additional discovery and no amendments to existing expert reports. *See* Plaintiff's Exhibit B. Plaintiff's counsel has acknowledged as much in withdrawing a recently served supplemental report from Dr. Greenberg *See* Heck Cert, Ex. I. There is nothing that Plaintiff would be able to do with this data even if he were to receive it at this point. This issue is a red herring and a backdoor attempt to bar Dr. Just's

15

testimony, a motion that Plaintiff chose not to file. The Court should not consider barring Dr. Just's testimony in this motion in limine.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's Motion in Limine in its entirety. Plaintiff's attempt to exclude unfavorable evidence under the guise of irrelevance or prejudice would improperly deprive the jury of its fundamental role as fact-finder. Furthermore, the evidence Plaintiff seeks to exclude is directly relevant to critical issues in this case, including damages, causation, and credibility, and its probative value substantially outweighs any potential prejudice.  Accordingly, this Court should deny Plaintiff's Motion in Limine and permit the jury to consider all relevant evidence in this matter.

**WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP**
*Attorneys for Defendants Bombardier Transportation (Holdings) USA, Inc. i/s/a Alstom Bombardier Transportation (Holdings) USA Inc. and Port Authority of New York and New Jersey*

By:   *Andrew J. Heck*
Andrew J. Heck, Esq.
7 Giralda Farms
Madison, New Jersey 07940
Tel: (973) 624-0800
Fax: (973) 624-0808

Dated: January 23, 2026

16

328631821v.1