# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

MATTHEW PENSO,

    *Plaintiff*,

v.

PORT AUTHORITY OF NEW YORK AND NEW JERSEY, BOMBARDIER TRANSPORTATION (HOLDINGS) USA INC., (now known as ALSTOM TRANSPORT USA INC. ("ALSTOM")) and JOHN DOE COMPANY #1-5 (fictitious designations),

    *Defendants*.

ELEFTERAKIS, ELEFTERAKIS & PANEK,

    *Petitioner*,

v.

MATTHEW PENSO,

    *Respondent*.

Civil Action No.:
2:23-cv-00474 (SDW) (JBC)

**VERIFIED PETITION FOR DETERMINATION AND ENFORCEMENT OF ATTORNEY FEE LIEN**

Petitioner, Elefterakis, Elefterakis & Panek ("EEP"), petitions this court as follows:

1.      On December 15, 2021, Mr. Penso was injured as a passenger aboard the Newark Liberty International Airport AirTrain.

2.      On August 31, 2022, Mr. Penso retained EEP, a personal injury law firm, with a dedicated New Jersey practice group, headed by seasoned federal trial attorneys.

3.      Pursuant to a Letter of Engagement and Retainer Agreement (the "Agreement") between EEP and Mr. Penso, EEP was entitled to thirty-three and one-third percent of any sum recovered, including through settlement, in consideration of the services it rendered on behalf of Mr. Penso.

4.      The Agreement also stated that Mr. Penso would be responsible for all expenses and disbursements unless his claim or action was dismissed.

5.      From the moment EEP was retained through February 10, 2025, the date Judge Clark granted EEP's motion to withdraw, EEP zealously represented Mr. Penso.

6.      In addition to EEP Partner Brian Vannella, who was the primary attorney litigating the matter on behalf of Mr. Penso, many other EEP partners, associates, and staff spent significant hours on the matter, including EEP's managing partners, John Elefterakis, Nick Elefterakis, and Ray Panek, who were all directly involved in the case.

7.      Mr. Penso and his father Marc Penso, who is an attorney admitted to practice in California and who served as Plaintiff's personal counsel, were afforded unfettered 24-hour access to EEP.  In fact, EEP attorneys participated in easily over 150 hours of phone calls with Mr. Penso and his personal attorney.

8.      Over the approximately two-and-a-half years it represented Mr. Penso, EEP spent thousands of attorney hours on this matter and conducted the vast majority of the work required to position the matter for favorable resolution, spanning the time frame of pre-suit through the middle of expert discovery.

9.      Prior to commencing suit, EEP (a) conducted a comprehensive pre-suit investigation into the facts and circumstances involving Mr. Penso's injury, and (b) retained and worked with engineering expert Steve Noonan, P.E., in developing the appropriate liability theories to assert in Mr. Penso's complaint.

10.      After suit was filed in the Superior Court of New Jersey on December 13, 2022, Defendants removed the matter to this Court.  After the parties' Rule 16 Conference with the Court, the case shifted to fact discovery, which was handled by EEP.  As the public docket demonstrates, the litigation was contentious, challenging, as Plaintiff's health and treatments changed over the discovery period, and extremely time-consuming.

11.    As an overview, EEP (a) drafted and filed the Summons and Complaint; (b) drafted and responded to interrogatories, document requests, and supplemental requests; (c) redacted and produced seven volumes of documents after collecting and reviewing a set of over 715,000 electronic emails and text messages from multiple accounts belonging to Mr. Penso and other Penso family members that Mr. Penso designated as fact witnesses; (d) reviewed Defendants' productions, which included 15,000 pages of records and logs relating to the AirTrain; (e) coordinated and participated in a lengthy site inspection of the Newark Liberty International Airport AirTrain including the APM track, signal emplacements, and system control center; (f) facilitated and assisted, to the best of its abilities, cooperation with and responses to third-party discovery demands Defendants served on Mr. Penso's treating physicians, parents, and associated entities; (g) consulted, both in-person in California and over the phone, with at least five of Mr. Penso's treating physicians/providers, and reviewed thousands of pages of medical records; (h) took and defended six party and witness depositions, which involved extensive preparation of Mr. Penso both remotely and, at Mr. Penso's and Marc Penso's request, nearly a week of in-person preparation in California, for his initial two-day deposition and then a subsequent deposition; (i) prepared for and took the Rule 30(b)(6) deposition of both Defendants; and (j) coordinated and negotiated the parameters of Defendants' independent medical examinations of Mr. Penso, and

4

coordinated the complicated logistics of Mr. Penso and Marc Penso's cross-country travel for these examinations.

12.     As the Court is aware and as evidenced on the public docket, the parties were embroiled in dozens of discovery disputes that required: (a) countless meet-and-confers between counsel prior to bringing discovery issues to the Court; (b) the preparation and submission of numerous status reports and individual letters; and (c) multiple Court conferences.

13.     In addition to fact discovery, EEP handled significant aspects of expert discovery including vetting and ultimately retaining five damages expert witnesses, including (a) an economist, (b) a life care plan expert, (c) a vocational expert, (d) a psychologist, and (e) a Complex Regional Pain Syndrome/pain management expert; provided those experts with the records necessary for their review and reports; and produced no less than twelve expert disclosures and fourteen supplemental expert disclosures.

14.     Among its many efforts and on top of all the above, EEP also prepared for and participated in a December 9, 2024, settlement conference.

15.     Despite EEP's zealous advocacy on behalf of Mr. Penso, the attorney-client relationship deteriorated, and EEP's representation of Mr. Penso was rendered unreasonably difficult by the client, due largely to the persistent interference of his father/personal counsel.

16.    On January 23, 2025, and only after affording Mr. Penso numerous warnings, EEP, confronted with an unmendable fracture in the attorney-client relationship, filed a motion seeking leave to withdraw as counsel, an interim stay pending the Court's determination of the motion, and a request to stay all proceedings for 60 days for Mr. Penso to retain new counsel to prevent any potential prejudice.

17.    Related to its motion, EEP filed a letter on January 28, 2025, explaining the following: "Specifically, the Court has ordered Plaintiff to produce certain documents on or before January 31, 2025.  Without unnecessarily divulging confidential information relating to representation, the issues under which EEP's representation has been rendered unreasonably difficult by the client, among other things, includes EEP's required course of action in complying with the Court's Order." (D.E. 98).

18.    To preserve client confidentiality, EEP provided the Court with an *ex parte* certification on January 31, 2025, providing numerous compelling facts in support of its motion to withdraw.

19.    During the February 10, 2025, hearing on the motion, Judge Clark concluded:

> [W]hen it comes to the motion to withdraw, as I said, I've reviewed the certification. It's a certification of -- *ex parte* certification of Brian Vannella. It has a -- there are, frankly abundant justifications for plaintiff's counsel's firm to withdraw from the case. I do think that the declaration of Mr. Vanella clearly demonstrates that the representation has been rendered unreasonably difficult by the client and that it wouldn't be in the client's interests or in the firm's interests for that representation to continue. . . . The reasons why withdrawal is sought, here, again, as demonstrated in, you know, painful detail in Mr. Vanella's declaration, the attorney-counsel [sic] relationship is essentially broken. And I don't think it's in a state where it's ever going to be repaired sufficient that it will be an effective vehicle for Mr. Penso to advance his interests in this litigation going forward. So the reasons why the withdrawal are sought are significant and more than enough to permit withdrawal.

(D.E. 106 at 6:6-7:4).

20.     Judge Clark noted that Mr. Penso did not oppose the withdrawal other than to raise concerns with pending discovery deadlines. (*See id.* at 5:5-21). He also explicitly addressed and concluded that no prejudice would befall Mr. Penso: "[W]e're not at the end of discovery. Mr. Penso has – we will give him an opportunity – and I think he's probably already taken steps to secure new counsel. So I don't think the prejudice to the litigants is going to be something that would countervail the need for withdrawal in this case. . . . There will be time to get all the discovery completed." (*Id.* at 7:6-15).

21.     To address Mr. Penso's discovery concerns, Judge Clark entered an Order on February 10, 2025, granting him 30 days to retain new counsel, affording him a deadline of March 31, 2025, to serve all outstanding written discovery, and staying all expert discovery deadlines.  (D.E. 105).

22.     Based on Judge Clark's findings in support of granting EEP's motion to withdraw and the extensions provided to Mr. Penso, EEP had justifiable cause to withdraw, and it cannot be said that Mr. Penso was abandoned.  *See, e.g.*, *Meister v. Verizon N.J., Inc.*, 2025 WL 1710917, at *11 (N.J. App. Div. June 19, 2025) (citing *Dinter v. Sears, Roebuck & Co.*, 278 N.J. Super. 521, 532 (App. Div. 1995)) (finding that "justifiable cause" "applies in instances where trust and confidentiality no longer exist in the attorney/client relationship or there is an ethical reason requiring withdrawal," such as "the total breakdown in communication between the attorney and client caused by the client.").

23.     Given the Court's prior Order finding that the reasons supporting withdrawal were "significant and more than enough to permit withdrawal" (D.E. 106 at 7:3-4) any argument that EEP abandoned the case would be frivolous and sanctionable.

24.     In fact, Mr. Penso and his father began seeking replacement counsel in October 2024, three months before EEP moved to withdraw, with one such firm contacting EEP directly to discuss the case.

8

25.    To place Mr. Penso in the best position to retain new counsel and maximize his chances of achieving a favorable outcome in his case, EEP agreed to defer reimbursement of the expenses it incurred in prosecuting the action until the matter was resolved.

26.    While Mr. Penso represented at the February 10, 2025, hearing that it would be "impossible" to retain new counsel in 30 days (*see* D.E. 106:21): (1) he formally engaged the law firm Stark & Stark PC ("Stark") three days later on February 13, 2025 (*see* D.E. 219-4); (2) Stark "began handling this file on February 20, 2025" (*see* D.E. 219-3 at 2); and (3) on March 4, 2025, attorneys from Stark formally entered appearances on behalf of Mr. Penso (*see* D.E. 108-09).

27.    Subsequent to appearing on behalf of Mr. Penso, Stark requested from EEP a copy of Plaintiff's file, which EEP provided on March 7, 2025, and EEP provided Stark with requested email communications beyond its file on August 20, 2025.

28.    Moreover, even after EEP's formal representation of Mr. Penso ended, EEP remained available to assist Stark, as needed, in the prosecution of Mr. Penso's case.  At Stark's request, EEP communicated with Stark by email and participated in several telephone conferences to respond to case-related questions.

29.     Further addressing any discovery concerns Mr. Penso and Stark may have had, Judge Clark entered an Order on April 14, 2025, which, among other things, extended fact discovery to June 30, 2025.  (D.E 112).

30.     After fact discovery closed on June 30, 2025 and just over four months from the Court granting EEP's withdrawal motion following its two-and-a-half years of representing Mr. Penso, Mr. Penso and Stark objected to Defendants' request for a discovery extension (*see* D.E. 115), and what little open issues remained up through the briefing of summary judgment were largely limited to expert discovery and a continuing dispute about Mr. Penso's compliance with the production of certain emails that had partly necessitated EEP's withdrawal motion.

31.     On February 25, 2026, Stark emailed EEP a letter indicating that the matter had been resolved and "propose[d] a division of the contingency fee that accurately reflects the proportion of services performed by each firm under New Jersey law."  (*See* Ex. A).

32.     The letter neither indicated the amount the case settled for nor the total contingency fee that was to be divided.  To date, the total contingency fee is not known by EEP.

33.     Despite representing Mr. Penso for less than one year (as compared to EEP's representation lasting approximately two-and-a-half years), Stark proposed taking 85% of the contingency fee while EEP would only receive 15%.

34. On March 9, 2026, EEP responded to the empty contentions Stark raised to supposedly justify its woefully-lopsided allocation of the contingency fee. (*See* Ex. B).

35. EEP pointed out how, for example: (1) Stark's contention that it needed to perform a "wholesale rehabilitation of a compromised file" was flatly contradicted by Stark's own submissions in the Final Pretrial Order (*see* D.E. 210), where every stipulated or contested fact was the product of EEP-based discovery; (2) Stark's contention that a New Jersey Product Liability Act claim should have been pursued was improper; (3) EEP's withdrawal was, according to the Court, warranted and necessary; a far cry from any abandonment; and (4) Stark's puffery surrounding the alleged fact discovery it conducted was unsupported both by Stark and the public record.

36. In addition, the Final Pretrial Order listed, as Plaintiff's witnesses, all six of the expert witnesses EEP retained, worked with, and disclosed during its representation of Mr. Penso. (*Id.*).

37. Stark communicated with EEP during its brief representation of Mr. Penso. At no point during that representation did Stark question or criticize the quality of EEP's legal work. Only when it came time to allocate attorneys' fees did Stark first raise issues with the work EEP had performed.

38.     In its March 9, 2026, letter, EEP provided Stark with a counterproposal whereby EEP would receive 75% of the contingency fee and Stark would receive 25%.  Stark did not respond to this letter.

39.     Under New Jersey law, "[a]fter the filing of a complaint . . . the attorney or counsellor at law, who shall appear in the cause for the party instituting the action . . . shall have a lien for compensation, upon his client' action" and the "lien shall not be affected by any settlement between the parties."  N.J.S.A. 2A:13-5.

40.     The statute further states that "[t]he court in which the action or other proceeding is pending, upon the petition of the attorney or counsellor at law, may determine and enforce the lien."  *Id.*

41.     Before EEP could proceed with its attorney lien petition, it needed to provide Mr. Penso with a fee arbitration pre-action notice that complied with New Jersey Rules of Court 1:20A-6, which it did on June 4, 2026 (*see* Ex. C), and then wait thirty days before filing a petition.

42.      Because the client did not commence a fee arbitration within the 30-day notice period, EEP can now move forward with its petition.

43.     To date, EEP has not received any compensation for its services to Mr. Penso that spanned approximately two-and-a-half years.  Nor has EEP received any reimbursement of the $255,145.45 in expenses and disbursements it paid on behalf of Mr. Penso.

12

44.     While EEP cannot access certain sealed materials related to Stark's motion to set the amount of the contingency fee (*see* D.E. 219-6), the Court appears to have set the total contingency fee in sealed orders dated June 12, 2026.  (*See* D.E. 222-23).

45.     Based on the relevant factors to be considered in a dispute over the apportioned percentage of a contingency fee realized in a personal injury action— such as the length of time each of the firms spent on the case relative to the total amount of time expended to conclude the client's case, the quality of representation provided, the results of each firm's efforts, the basis for the client switching representation, the viability of the claim at the time of transfer, and the amount of the recovery ultimately realized (*see, e.g.*, *La Mantia v. Durst*, 234 N.J. Super. 534, 540-41 (App. Div. 1989)—EEP respectfully requests its *quantum meruit* percentage of the contingency fee realized.

WHEREFORE, Petitioner EEP petitions this Court to:

1.     Declare that EEP, consistent with this Court's ruling that the reasons advanced for withdrawal were "significant and more than enough" (D.E. 106 at 7:3-4), its finding that the relationship between EEP and Mr. Penso was "essentially broken" (D.E. 106 at 6:6-7:4), and its granting of EEP's motion to withdraw, EEP did not abandon Mr. Penso;

2.      Determine the amount of Petitioner's fee lien based on the outstanding expenses and disbursements owed to EEP and its *quantum meruit* percentage of the contingency fee realized;

3.      Order that EEP's lien be satisfied from the settlement proceeds prior to distribution of the funds to Plaintiffs or Stark; and

4.      For such other relief as this Court may deem appropriate.

Respectfully submitted,

Dated:  July 17, 2026          By: */s/ Kevin J. Musiakiewicz*
    Newark, New Jersey          Kevin J. Musiakiewicz
    **CALCAGNI & KANEFSKY LLP**
    One Newark Center
    1085 Raymond Boulevard, 18th Floor
    Newark, New Jersey 07102
    E: tcalcagni@ck-litigation.com
    T: (862) 397-1796
    *Attorneys for Petitioner Elefterakis, Elefterakis & Panek*

## <u>CERTIFICATION OF VERIFICATION</u>

I, Brian J. Vannella, of full age, certifies as follows:

1.     I am a partner at the law firm Elefterakis, Elefterakis & Panek, Petitioner herein.  I am fully familiar with the facts set forth in the annexed Verified Petition as I was one of the primary attorneys litigating this action on behalf of Mr. Penso.

2.     I have read the annexed Verified Petition and hereby certify that all of the factual allegations therein are true to the best of my knowledge.

I certify that the foregoing statements made by me are true.  I am aware that any willfully false statements will subject me to punishment.

Dated:  July 17, 2026                    */s/ Brian J. Vannella*
       New York, New York                    Brian J. Vannella, Esq.