# EXHIBIT A



February 25, 2026

**VIA EMAIL**

Nick Elefterakis, Esq.
Elefterakis, Elefterakis & Panek
80 Pine Street, 38th Floor
New York, NY 10005

**Re:**    Division of Attorney's Fees – Matthew Penso v. Port Authority of New York and New Jersey, et al.
Docket No.: 2:23-cv-00474-SDW

Dear Mr. Elefterakis:

As you know, our firm assumed representation of Matthew Penso after your firm, Elefterakis, Elefterakis & Panek (hereinafter "EEP") moved to withdraw as counsel. Following our successful resolution of this matter, we write to propose a division of the contingency fee that accurately reflects the proportion of services performed by each firm under New Jersey law.

**EEP's LACK OF COMPETENT WORK AND WITHDRAW**

When we entered the case in March 2025, the matter was not in a posture capable of successful prosecution. The file faced imminent expert and dispositive motion deadlines, the expert framework was incomplete, and your firm had already moved to be relieved as counsel. The client was left in a procedurally vulnerable position at a critical stage of federal litigation.

It is also significant that your firm is a New York practice and was not positioned to litigate a complex New Jersey federal products case through dispositive motion practice and trial. The procedural and substantive demands of this matter required experienced New Jersey trial counsel familiar with federal pleading standards, Daubert practice, and the interplay between negligence claims and the New Jersey Product Liability Act. Those requirements became evident at the January 29, 2026 hearing before Judge Wigenton.

Most critically, the complaint filed by your firm contained fundamental structural and substantive deficiencies that materially jeopardized the case. At the January 29, 2026 hearing, Judge Wigenton conducted a detailed review of the pleading and identified defects that exposed the matter to threshold dismissal. Among other issues:

- No Product Liability Act claim was pled, despite the theory later advanced.



- The complaint lacked structured counts and was described by the Court as essentially a narrative.
- The Court noted that it was "difficult to find" the claims being asserted by the plaintiff.
- Negligence and product liability theories were blurred together in a confusing manner.
- The pleading included allegations unrelated to the operative issues.
- Although an amendment to the Complaint had been contemplated in 2024, it was never pursued, and by the time Stark & Stark assumed representation, an amended complaint was no longer a viable option.

Stark & Stark was tasked with prosecuting a case under a materially defective complaint that could not be cured. That is not a minor procedural issue.  It is a threshold vulnerability that could have resulted in dismissal of Mr. Penso's case irrespective of the merits.

Upon assuming representation, we immediately assigned two equity partners, both Certified Civil Trial Attorneys licensed and experienced in New Jersey, to develop, reconstruct and stabilize the case. What followed was not routine continuation of prior work. It was wholesale rehabilitation of a compromised file which clearly was not a priority to EEP.

Specifically, Stark & Stark had to:

- Obtain significant outstanding fact discovery from the defendants which EEP failed to pursue;
- Followed up on discovery EEP failed to seek responses to from the Defendants;
- Provide all outstanding discovery from the defendants to the experts to draft their reports;
- Produce significant amounts of discovery which EEP had failed to produce and obtain;
- Provide Plaintiff's experts with records that EEP failed to provide;
- Obtain and provided necessary train data which EEP ignored which was vital to proving liability;
- Obtain updated all expert reports on an expedited basis;
- Produced twenty four (24) discovery disclosures;
- Obtained a new CRPS expert on behalf of Plaintiff who was an expert in CRPS;
- Retained a dental expert who traveled to California to conduct a home examination;
- Engaged a biomechanical engineer as a rebuttal expert;
- Prepared, edited and created a day in the life video with Plaintiff and a vendor which was required to film multiple hours over multiple days;
- Retained a new economist when the prior expert could not provide a timely rebuttal;
- Completed eighteen (18) expert depositions;
- Prepared and filed six dispositive motions;
- Filed a motion for summary judgment against the defendants;

4913-8205-4546, v. 1



- Filed multiple Daubert challenges to Defendants experts based on testimony obtained from Defendants Expert depositions;
- Successfully opposed defendants' summary judgment motion;
- Successfully opposed multiple Daubert motions;
- Positioned the case for Plaintiff to be in a position to obtain a settlement offer;
- Successfully resolved the matter.

In December alone, four attorneys worked full time on this matter, supported by paralegals and staff. The work performed by Stark & Stark constitutes the overwhelming majority of the substantive litigation effort in this case and directly produced the recovery.

## LEGAL STANDARD

Under New Jersey law, fees between successive counsel are allocated pursuant to quantum meruit. Courts evaluate:

- The quantity and quality of work performed
- The viability and condition of the case at transfer
- Each firm's contribution to the recovery
- The circumstances surrounding withdrawal

*La Mantia v. Durst* makes clear that this is not a simple hourly calculation.  Instead, it is a qualitative assessment of contribution and value.

New Jersey's RPC 1.5(e) further requires that any division of fees between lawyers not in the same firm be proportionate to the services performed and reasonable in total.  Where counsel withdraws from a contingent matter without good cause, particularly at a critical stage and under circumstances that prejudice the client, courts recognize that such conduct may constitute abandonment, warranting forfeiture or substantial reduction of any fee claim.

When this matter was transferred, the case faced imminent expert deadlines, massive discovery holes, dispositive motion risk, and a structurally deficient pleading that could not be amended. Discovery was not appropriately handled by EEP and the expert record was incomplete. The procedural posture of the case was in bad shape.  Aside from the insufficient attention to discovery, EEP failed to meet Court imposed deadlines and blew the timeline for which Plaintiff could have amended his complaint to include a punitive damages claim.  As EEP knew at the time of its withdraw, the risk to Mr. Penso was substantial.

Your firm filed the initial complaint and conducted what could only be described partial discovery. Our firm performed virtually all substantive litigation work that drove the case to resolution, fact discovery, expert witness reconstruction and retention, full expert discovery, dispositive motion practice, Daubert defense, and strategic positioning for

4913-8205-4546, v. 1



settlement.  The difference is not incremental. It is fundamental. We did not merely continue the case. We salvaged and rebuilt it.

The recovery achieved is directly attributable only to Stark & Stark's work. When we entered the case, the likelihood of recovery was materially uncertain given the pleading deficiencies and procedural posture. Our intervention created the conditions for resolution.

As noted above, your firm moved to be relieved at a critical stage. Regardless of interpersonal dynamics, the withdrawal left the client exposed on a matter which EEP had failed to perform its job and required significant emergency stabilization by Stark & Stark. Under New Jersey law, a factfinder could reasonably characterize EEP's decision as abandonment.

## PROPOSED ALLOCATION

Under a strict application of quantum meruit principles, the substantial majority of the contingency fee belongs to our firm. Given the condition of the case at transfer and the circumstances of withdrawal, as noted above, a factfinder could reasonably conclude that your firm's recoverable fee is minimal, or nothing at all.

Nevertheless, in an effort to avoid fee arbitration and to spare the client from involvement in a dispute between counsel, we propose the following allocation:

**85% to our firm / 15% to your firm.**

The proposed allocation is appropriate and reasonable under RPC 1.5(e).  This allocation reflects the overwhelming proportion of litigation services performed by Stark & Stark.  It accounts for the fact discovery Stark & Stark had to complete.  It accounts for the defective pleadings Stark & Stark inherited after amendments to Plaintiff's complaint were no longer available.  The proposed allocation also recognizes that Stark & Stark effectively saved Mr. Penso's case from dismissal.  Importantly, for EEP, this allocation provides EEP certainty over potentially forfeiting its entire fee. We believe this proposal is more than fair under the circumstances.

Please respond within 14 days. Absent agreement, we will pursue resolution through the appropriate fee dispute mechanism with Judge Wigenton, where we are confident that the La Mantia factors, the procedural history, and the record of the January 29, 2026 hearing will strongly support our position.

4913-8205-4546, v. 1



We remain willing to resolve this amicably, but we are fully prepared to litigate the fee issue if necessary.

Very truly yours,

STARK & STARK
A Professional Corporation


By: *Evan J. Lide /s/*
       Evan J. Lide, Esq.

By: *Domenic B. Sanginiti, Jr.*
       Domenic B. Sanginiti, Jr., Esq.

4913-8205-4546, v. 1