# EXHIBIT B



March 9, 2026

Stark & Stark, P.C.
Attn: Evan Lide, Esq. and
Dominick Sanginetti, Esq.
100 American Metro Boulevard
Hamilton, NJ 08619
*Via Electronic Mail*

> **Re:** **Division of Attorneys' Fees – Matthew Penso v. Port Authority of New York and New Jersey, et al.**
> **Docket No: 2:23-cv-00474-SDW**

Dear Mr. Lide and Mr. Sanginiti,

We are in receipt of your February 25, 2026 letter and write in response to detail the substantial work performed by Elefterakis, Elefterakis & Panek ("EEP") prior to our withdrawal, and to correct the mischaracterizations in your correspondence regarding the quality and competence of EEP's representation of Mr. Penso.

All three of EEP's managing partners, Nicholas Elefterakis, Esq., John Elefterakis, Esq., and Ray Panek, Esq., were directly involved in Mr. Penso's case, along with an additional partner, Brian J. Vannella, Esq., associate, Gina Nicasio, Esq., and dedicated paralegal. Mr. Penso and his personal counsel were afforded unfettered access to these attorneys, including availability outside of normal business hours.

While, as you note, EEP is primarily a New York practice, the firm also maintains a dedicated New Jersey practice group and has seasoned federal trial attorneys with extensive experience across all aspects of federal litigation. Notably, EEP currently represents Brian Flores in his landmark race discrimination class action against the NFL and multiple teams pending in the Southern District of New York. In just the first two months of 2026 alone, EEP has secured federal court settlements totaling more than eight figures.

Your contention that EEP's work lacked competence and that Stark & Stark needed to perform "a wholesale rehabilitation of a compromised file" has no basis in reality and is flatly contradicted by your own submissions in the Final Pretrial Order. The stipulated facts, as well as Plaintiff's contested facts, were obtained by EEP during fact discovery. In fact, it does not appear that Stark & Stark submitted a single fact, stipulated or contested, other than those obtained by EEP during fact discovery.

The claimed economic damages, including lost earning capacity and the cost of future life care, were calculated by experts retained by EEP, based on evidence EEP obtained. In particular, EEP marshaled the necessary evidence and engaged qualified experts to establish a present-value cost of future life care exceeding $24,000,000. Stark & Stark's failure to secure a settlement of more than 55% of the provable cost of future care cannot be laid at the feet of EEP.

Moreover, your contention that the action was improperly pleaded lacks merit. As you are no doubt aware, the New Jersey Products Liability Act ("NJPLA") does not apply to claims arising from the maintenance or servicing of a product. *See e.g.*, *Universal Underwriters Ins. Group v. Public Service Elec. & Gas Co.*, 103 F. Supp. 2d 744 (D.N.J. 2000). As your office argued, the undisputed facts (which were obtained by EEP) satisfy the elements of *res ipsa loquitur*, and Mr. Noonan's findings (again, obtained by EEP) establish that Mr. Penso's accident and resulting injuries were caused by the negligent maintenance and servicing of the AirTrain.

Any commentary to the contrary by the Court during the January 29, 2026 hearing can only be reasonably understood as intended to facilitate, or create leverage for, settlement discussions between the parties.

As Stark & Stark is aware, EEP was forced to move to withdraw as counsel because there had been an irreparable deterioration of the attorney-client relationship as EEP's representation had been rendered unreasonably difficult by the client, due largely to the actions of plaintiff's personal counsel.  We are confident that any factfinder would agree with Judge Clark that withdrawal was both warranted and necessary in light of the conduct of Mr. Penso and his personal counsel.

While you allege to have obtained and produced significant discovery, you fail to specify same.  Public filings available on PACER suggest that any additional discovery was limited to materials Mr. Penso had previously refused to produce, against EEP's strenuous advice and in violation of Court orders – conduct that, in part, necessitated EEP's motion to withdraw as counsel.

## <u>WORK PERFORMED BY EEP</u>

Stark & Stark represented Mr. Penso for less than one (1) year. In contrast, EEP represented Mr. Penso for nearly three (3) years, working on the matter on an almost daily basis. During that time, EEP performed the lion's share of the work in this case, including:

- Performing an initial investigation;
- Retaining Steven Noonan, P.E. as engineering expert and holding initial consultations to help shape the claims and identify the evidence and documents necessary for his analysis;
- Preparing and filing the Summons and Complaint;
- Preparing and serving Rule 26 and Supplemental Rule 26 Disclosures;
- Preparing numerous joint and individual reports and submissions to the Court and appearing for numerous telephonic status conferences;
- Scheduling and appearing for site inspection with Steven Noonan., P.E.:
  - o Participating in an on-site safety training session conducted by Alstom personnel prior to the inspection;
  - o Traversing the guideway walkway along the APM track to access and examine the signal emplacements; and
  - o Observing the APM system's control center from a designated viewing area, in addition to inspecting the tracks and signaling fixtures involved in the subject accident.
- Reviewing and analyzing more than 15,000 pages of records and logs, and identifying the critical records relating to the malfunction at the time of the accident, as well as Defendants' prior notice of the condition, thereby establishing a prima facie case of negligence;
- Obtaining and reviewing thousands of pages of medical records.
- Preparing and filing various discovery related motions;
- Retained FTI Consulting Technology LLC for data collection including but not limited to text messages and emails from and between Matthew Penso and his family members, Marc Penso, Nancy Penso, and Michael Penso;
- Conducting pre-extraction discussions with FTI as to the technical requirements of extracting, batching, reviewing, redacting, and producing emails and text messages;
- Coordinating extraction from the cell phones and email accounts of Mr. Penso;
- Conducting individual, line-by-line review of emails and text messages prior to Court-Ordered disclosure to Defendants;
  - o Negotiating and finalizing search term list with defense counsel;

- Overseeing the extraction of 496,566 total documents from personal email accounts, including 300,518 documents containing at least one agreed-upon search term;
- Performing redactions of partially responsive emails and messages to protect privilege, relevance limitations, and confidentiality;
- Reviewing and producing of seven (7) volumes of communications from Mr. Penso;

- Conducting deposition of liability and damages witness, Amanda Stergas;
- Engaging in extensive remote and in-person deposition preparation with Mr. Penso in the weeks and days preceding his deposition;
- Traveling to California as part of a four-person team – Nicholas Elefterakis, Esq.; Brian J. Vannella, Esq.; Gina Nicasio, Esq.; and paralegal Alex Moore – for a week-long visit to meet with Mr. Penso and his family, consult with several of his treating physicians, and conduct intensive deposition preparation;
- Defending Mr. Penso's deposition over the course of two days;
- Appearing for depositions of damages witnesses, Marc Penso and Nancy Penso;
- Engaging in extensive logistical discussions and negotiations with defense counsel with regard to defendants' medical examinations;
- Coordinating and scheduling Mr. Penso and his father's travel from California to New Jersey, including flights, hotels, and transportation;
- Retaining companion service to observe defendants' medical examinations;
- Retaining Kristin Kucsma, M.A. as economist;
- Retaining Stuart Kahn, M.D. as life care plan expert;
- Retaining Dan Wolstein, Ph.D. as vocational expert;
- Retaining Rhonda Greenberg, Psy.D. as psychologist;
- Retaining Anson Moise, M.D. as pain management and CRPS expert;
- Coordinating appointments with Mr. Penso to meet with experts while he was in the New Jersey/New York area;
- Providing experts with the necessary records for their review;
- Producing twelve (12) expert disclosures;
- Producing fourteen (14) supplemental expert disclosures;
- Appearing for deposition of damages witness, Michael Penso;
- Traveling to California as part of a two-person team – Brian Vannella, Esq. and Gina Nicasio, Esq. – for three days to meet with Mr. Penso and his family, engage in deposition preparation with Mr. Penso, and defend Mr. Penso at his further deposition;

- Participating in more than 100 hours of phone calls with Mr. Penso during the course of EEP's representation (calls involved at least one, but often several, of the managing partners, partner, and associate listed above);
- Coordinating extraction of 219,967 total communications to and from Prime Restaurant Group email account for Matthew Penso and reviewed same for privilege and confidentiality;
- Preparing settlement conference submission for the Court;
- Participating in a settlement conference before Judge Clark on December 9, 2024;

As discussed during our initial call, EEP performed the majority of the work in this action. A fair allocation of attorneys' fees that reflects the relative contributions of both firms would be:

**<u>75% of the total fees to EEP / 25% of the total fees to Stark & Stark</u>**

We are not persuaded by your self-serving, perfunctory, and conclusory assertions that this case was at risk when Stark & Stark assumed responsibility for the file. As noted above, your contention that Stark & Stark "performed virtually all substantial litigation work that drove the case to resolution" collapses upon even a cursory review of your Final Pretrial Order. Stark & Stark's entire trial presentation depended squarely and unequivocally on the evidence and expert opinions secured by EEP.

Our initial suggestion of an allocation of legal fees undervalued EEP's contribution to the recovery in the hope of resolving this matter amicably. Should litigation become necessary, we are confident the Court will conclude that EEP is entitled to no less than 75% of the total attorneys' fees.

Very truly yours,
ELEFTERAKIS, ELEFTERAKIS & PANEK

*Nicholas Elefterakis*

By: _____

Nicholas Elefterakis, Esq.

*Brian J. Vannella*

By: _____

Brian J. Vannella, Esq.